IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
PECOS DIVISION

| | |
|---|---|
| JUDD FOUNDATION, <br><br>Plaintiff, <br><br>v. <br><br>KUKJE GALLERY, INC. s/h/a KUKJE GALLERY, and TINA KIM GALLERY, LLC s/h/a TINA KIM GALLERY, <br><br>Defendants. | Case No. 4:22-cv-00027-DC-DF |

## FIRST AMENDED COMPLAINT

Plaintiff, Judd Foundation, by and through its undersigned counsel, alleges as follows:

### NATURE OF THE ACTION

1. This action is for breach of a consignment agreement entered into by Judd Foundation with respect to a valuable work of art by Donald Judd which was seriously damaged while in defendants' possession.

2. The work was insured while in defendants' possession by defendant Tina Kim Gallery on behalf of Tina Kim Gallery and its affiliated Kukje Gallery (each a "Defendant," together "Defendants").

3. Once Judd Foundation discovered the damage, it entered into negotiations with Defendants and Tina Kim Gallery's insurance broker for compensation. The parties agreed that the damage was almost certainly irreversible, and the work was therefore no longer saleable.

1

4.     Pursuant to these negotiations, the insurance company paid Judd Foundation the full amount of its coverage, i.e. eighty percent of the retail value of the work in return for a full release against it. The release did not include the Defendants because, pursuant to the consignment agreement, the consignee was liable for the remaining twenty-percent balance of the retail value of the work.

5.     Despite repeated requests by Judd Foundation, Defendants have not paid Judd Foundation the twenty percent balance of the retail value of the work they owe for the loss. Accordingly, Judd Foundation brought an action in state court in Texas for breach of contract.

6.     Defendant Tina Kim Gallery removed the action to this court and moved to dismiss with respect to Tina Kim Gallery for lack of personal jurisdiction. Judd Foundation files this First Amended Complaint to make further factual allegations which confirm that jurisdiction over Tina Kim Gallery is proper.

**PARTIES**

7.     Plaintiff Judd Foundation is a nonprofit Texas corporation with its principal place of business in Marfa, Presidio County, Texas.

8.     Defendant Kukje Gallery, Inc., ("Kukje Gallery") is a Korean corporation with its principal place of business at 54 Samcheong-ro, Jongno-gu Seoul, Korea. On information and belief, the sole owner of Kukje Gallery is Charles Kim.

9.     Defendant Tina Kim Gallery, LLC ("Tina Kim Gallery") is a New York corporation with its principal place of business at 525 West 21 Street, New York, New York 10011. On information and belief, Tina Kim is the sole owner of the Tina Kim Gallery, which is affiliated with Kukje Gallery and, on information and belief, Tina Kim is Charles Kim's sister. Tina Kim Gallery waived service of process with respect to itself in effecting removal to this Court.

**JURISDICTION**

10. The Court has jurisdiction over this matter pursuant to 28 USC § 1332, because there is complete diversity of jurisdiction between the parties and the amount in dispute is in excess of $75,000.

11. The Court has jurisdiction over the Defendants because this dispute concerns and arises from agreements entered into by and between Defendants and Plaintiff, a Texas nonprofit corporation, concerning the consignment and insurance of the work of art at issue, and the consignment agreement states that all disputes arising from the agreement would be heard and adjudicated in the state or federal courts of Texas.

**VENUE**

12. Venue is proper in Presidio County because Plaintiff's principal place of business was and is in Marfa, Presidio County, Texas.

**BACKGROUND FACTS**

13. Judd Foundation was established in 1996, pursuant to the last will and testament of the artist Donald Judd to maintain and preserve his permanently installed living and working spaces, libraries, and archives in Marfa, Texas and New York, New York. The Foundation promotes a wider understanding of Judd's artistic legacy by providing access to these spaces and resources and by developing scholarly and educational programs.

14. Judd Foundation owns a number of works by Donald Judd from which it selects, from time to time, certain sculptures considered ancillary to its core collection to offer for sale to help support the Foundation's mission.

15. On or about March 16, 2015, Judd Foundation consigned a work created by Donald Judd, *Untitled, 1991*, 91-86 (the "Work") to the Kukje Gallery. The Work is one in a series of

works of art known as Menzikens, a sculpture measuring approximately 9¾ x 39¼ x 9¾ inches made of clear anodized aluminum and, in this case, a dark transparent green acrylic sheet. The consignment authorized Kukje Gallery (and its principal and owner Charles Kim) to exhibit, offer for sale, and sell the Work at a "Retail" or "Sale" Price of $750,000, which was based on the Work's fair market value. *See* Exhibit A attached hereto.

16. The consignment agreement expressly held the consignee responsible for any damage to the Work, including any damage that was not covered by its insurance company up to the Retail Price.

17. The consignment agreement also held consignee solely responsible for the cleaning and conservation of the Work while in its care, though it also required consignee to obtain Judd Foundation's prior written consent for and such cleaning or conservation.

18. The consignment agreement contained a Texas choice of law provision and stated that "the Consignee hereby irrevocably consents to the Texas State and United State Federal Courts located in Texas for all purposes in connection with any action relating to this agreement . . ."

19. The parties understood that the Work was being consigned for exhibition by Kukje Gallery or its New York affiliate Tina Kim Gallery in May of that year at the important Frieze Art Fair in New York.

20. Judd Foundation knew that Kukje Gallery and Tina Kim Gallery were owned and run by members of the same family and frequently work closely together. For example, the galleries frequently take booths together at major art fairs such as Art Basel under the name "Kukje Gallery/Tina Kim Gallery," aggregating their exhibition locations ("Seoul, Busan, New York"), and describing themselves in published materials as "affiliated" and "regularly collaborat[ing] on organizing exhibitions." *See* Exhibit B.

21. Judd Foundation was therefore not surprised when Kukje Gallery requested that the Work be delivered for consignment not to Kukje Gallery in Korea, but that it be shipped directly to the designated shipping agent of Tina Kim Gallery in New York City.

22. Judd Foundation agreed to do so on condition that the work be properly insured pursuant to the consignment agreement.

23. As is Judd Foundation's practice, the Work was carefully inspected and a condition report prepared by a conservator at Moebel-Transport AG, before it was shipped in April 2015 from its then location in Switzerland to Defendants. The work was in good condition when shipped and no fingerprints were observed.

24. The Tina Kim Gallery director confirmed that the work was received in New York "safe and sound." The Work was exhibited by Tina Kim Gallery at the Frieze art fair in May 2015, but it did not sell.

25. In October 2015, the Managing Director of Tina Kim Gallery informed Judd Foundation by email that "Kukje Gallery/Tina Kim" would like to exhibit the Work at the Abu Dhabi Art Fair in November. Accordingly, on or about October 23, 2015, Judd Foundation extended the consignment under a new contract in which the Sale Price was increased to $800,000 to reflect a higher fair market value from increased prices for similar work on the market. *See* Exhibit C.

26. Proof of insurance was delivered in the form of a Certificate of Insurance dated October 28, 2015, from Arthur J. Gallagher & Co. in New York City, Tina Kim Gallery's insurance broker. The Certificate of Insurance names Tina Kim Gallery in New York as the insured party with respect to the Work, along with three other works by Donald Judd consigned by Judd

5

Foundation to Kukje Gallery, and that the COI was issued for Judd Foundation at its address in Marfa, Texas. *See* Exhibit D.

27. The COI further states that the policy covers "usual all risks terms and conditions including transit to, from, and while at, the premises of the Tina Kim Gallery and including any un-named locations or any transits that might be required anywhere in the World."

28. The COI further states that "This policy is extended to include works of art while on exhibition/consignment at Kukje Gallery, South Korea. With respects to the above works of art Judd Foundation is included as an Additional Insured/Loss Payee as their interests may appear."

29. In other words, the galleries worked so closely together that insurance in the name of Tina Kim Gallery included works of art **in general** on consignment at its affiliate gallery Kukje Gallery, including but not only the four works consigned to Kukje Gallery set forth in the COI.

30. In December 2016, Defendants exhibited the Work at the Miami Basel Art Fair in a joint Kukje Gallery/Tina Kim Gallery booth.

31. On or about April 26, 2017, Judd Foundation again extended the consignment agreement under a new contract with an increased Sale Price of $850,000 to reflect the higher fair market value of the Work. *See* Exhibit E. Kukje Gallery informed Judd Foundation that the Work would again be shown at an art fair in a booth under the name of Tina Kim Gallery. The consignment agreement of March 16, 2015 and its two extensions are hereinafter designated the "Consignment Agreements."

32. On or about May 9, 2018, Judd Foundation informed Kukje Gallery that the consignment was terminated and that the Work should be returned to Judd Foundation at its Marfa, Texas address.

6

33. On or about July 25, 2018, the Work was received by the Judd Foundation in Marfa where it remained crated awaiting a condition examination.

34. When the Work was uncrated, it was examined by a Judd Foundation conservator, who immediately noted that the Work had been disfigured by fingerprints.

35. Donald Judd was famous for his exacting fabrication standards and for the ongoing physical integrity of his works of art. While his works are robustly constructed, the anodized aluminum surface of the Menzikens requires very careful handling, and if mishandled can mark easily. In particular, gloves are required when handling the works. Any fingerprints on the anodized aluminum surface must be removed quickly or over time the oils in the fingerprints can react with the surface and leave permanent, disfiguring, irreversible marks.

36. To determine when the damage occurred, Judd Foundation requested that Kukje Gallery provide a copy of all relevant condition reports. Condition reports may be made for internal quality control purposes and are also frequently made before and after a work is shipped in case a work is damaged in shipment and an insurance claim must be made. In December 2018, Kukje Gallery sent Judd Foundation three reports which all noted the existence of the fingerprints on the Work prior to shipment back to Marfa.

37. The first of the condition reports, dated July 1, 2017, two years after the initial consignment and a year before the Work was returned to Marfa, was prepared for Tina Kim Gallery when the Work was at the New York warehouse UOVO. The report stated that "Object is in good structural condition. There are potential fingerprints in two places on the top of the sculpture. There is also a small blemish in the right-side panel. See photos." Neither Kukje Gallery nor Tina Kim Gallery alerted Judd Foundation to this damage.

38. The second condition report was prepared for Kukje Gallery on March 16, 2018, which also noted "potential pre-existed fingerprints" on the Work. Neither Kukje Gallery nor Tina Kim Gallery alerted Judd Foundation to this damage.

39. The third condition report was prepared for Kukje Gallery on June 29, 2018, in preparation for returning the Work to Judd Foundation. It noted "Potential fingerprints and blemishes present on the work." Neither Kukje Gallery nor Tina Kim Gallery alerted Judd Foundation to this damage.

40. On or about December 21, 2018, Judd Foundation formally alerted Kukje Gallery and Tina Kim Gallery that the Work had arrived in Marfa significantly damaged by fingerprints.

41. As soon as Judd Foundation discovered the damage, it along with Tina Kim Gallery sought advice from several professional conservators to evaluate the extent of the damage and whether it was reversible. These conservators determined that it was not. Accordingly, Judd Foundation sought compensation from Tina Kim Gallery's insurance.

42. Between early 2019 and May 2021, Judd Foundation entered into extensive negotiations with Kukje Gallery, Tina Kim Gallery, and their insurance brokers and adjusters Arthur J Gallagher and GJ Smith & Associates, to evaluate the extent of the damage from the fingerprints, to what extent if at all it was treatable, and the appropriate amount of compensation.

43. In April 2019, Judd Foundation entered into a payment and release settlement agreement with Defendants and their insurance company with respect to lesser damage to **another** of the works by Donald Judd that Judd Foundation had consigned under the Consignment Agreements. In that case, the release was to the benefit of "Arthur J. Gallagher & Co., Tina Kim Gallery/Kukje Gallery, and GJ Smith & Associates."

44. With respect to the Work at issue in this suit, however, the parties agreed that the damage was most likely irreversible and as a result the Work was unsaleable. In May 2021, Judd Foundation, Arthur J. Gallagher & Co., and GJ Smith & Associates entered into a settlement agreement by which the insurance company paid Judd Foundation the amount of $680,000 (80% of the last consignment Retail/Sale Price) in return for a release of all claims against the insurance company with respect to the Work.

45. The settlement agreement did not release either of the two Defendants against any claims with respect to the Work because the Consignment Agreements stated that the consignee "is responsible for any loss or damage not compensated by insurance up to the Sale Price and hereby indemnifies Consignor against any such uncompensated loss or damage up to the Sale Price."

46. The difference between the Sale Price in the 2017 consignment agreement and the amount paid by the insurance company was $170,000.

47. Other Menzikens similar to the Work now have an increased retail value (fair market value) of approximately $950,000, as evidenced by comparable consignments.

48. Beginning in mid-2021, Judd Foundation has repeatedly demanded both orally and in writing that Defendants reimburse Judd Foundation for the difference between what their insurance company paid for the loss and the retail value of the Work. Defendants have not paid this amount.

**Count 1: Breach of Contract**

49. Plaintiff entered into Consignment Agreements with Defendant Kukje Gallery to offer and sell the Work.

50. Each of the Consignment Agreements included an exclusive Texas forum selection clause.

51. The Work was insured by Defendant Tina Kim Gallery under a policy which covered works consigned to and/or exhibited at, and in transit between, Tina Kim Gallery and Kukje Gallery.

52. Plaintiff performed fully under the Consignment Agreements.

53. On Defendant Kukje Gallery's request, Plaintiff shipped the Work to Defendant Kukje Gallery's sister gallery, Tina Kim Gallery to offer for sale and sell under the terms of the Consignment Agreements.

54. Between 2015 and July 29, 2018, the Work remained on consignment to, and in the possession of, Kukje Gallery or Tina Kim Gallery. While not a signatory on the Consignment Agreements, Defendant Tina Kim Gallery jointly assumed the obligations under the Consignment Agreements with its sister gallery, Defendant Kukje Gallery.

55. Among other things, Tina Kim Gallery's knowledge of the Consignment Agreements and its consent to be bound by their terms is evidenced by its acceptance of delivery of the Work as instructed by its sister gallery, its marketing of the Work in its gallery and at art fairs under the terms of the Consignment Agreements, and its insurance of the Work on behalf of itself and Kukje Gallery when in its possession or the possession of Kukje Gallery under the Consignment Agreements.

56. While in Defendants' possession and under the scope of the Consignment Agreements, Defendants damaged the Work.

57. Defendants were aware that the Work was damaged no later than July 2017. Nonetheless, Defendants failed to alert Plaintiff to the damage or seek permission and guidance on cleaning and repairing the damage as required under the Consignment Agreements.

58. Plaintiff only became aware of the damage to the Work on inspecting the Work after its return from consignment.

59. Because the damage to the Work was not promptly addressed by Defendants, the Work was irreparably damaged and is unsaleable.

60. Defendants have failed to compensate Plaintiff for the difference between the settlement amount paid by Defendants' insurance company and the full current Retail Value of the Work, as required under the Consignment Agreements.

61. Accordingly, Plaintiff has been damaged in an amount to be determined at trial, but in any event no less than $270,000.

62. All conditions precedent have been performed or have occurred.

63. Plaintiff is also entitled to recover its reasonable attorney's fees because this is a claim on a written contract with the meaning of section 38.001 of the Texas Civil Practice and Remedies Code. Plaintiff perfected its right to reasonable attorney's fees under this statute by presenting its claim to payment under the Consignment Agreement to Defendants. More than 30 days have elapsed since the claim was presented to Defendants and payment for the just amount owed has not been tendered by Defendants.

**PRAYER**

WHEREFORE, Plaintiff prays that Plaintiff have Judgment against the Defendants, jointly and severally, for:

1. All general damages in an amount no less than $170,000;

2. Special damages for the additional loss of the fair market value of the Work of at least $100,000;

3. Pre-judgment and post-judgment interest at the lawful rate;

4. Reasonable attorney's fees and costs of suit; and

5. Such other and further relief to which Plaintiff may be justly entitled.

        Respectfully submitted,

        KEMP SMITH LLP
        221 North Kansas, Suite 1700
        El Paso, Texas 79901-1441
        (915) 533-4424
        (915) 546-5360 (FAX)


        By:   Ken Slavin
            KEN SLAVIN
          State Bar No. 18496100
          ken.slavin@kempsmith.com


        ROTTENBERG LIPMAN RICH P.C.
        230 Park Avenue, 18th Floor
        New York, N.Y. 10169
        (212) 661-3080
        (646) 203-0287

        By:   Christopher J Robinson
            CHRISTOPHER J ROBINSON
            crobinson@rlrpclaw.com
            Admission pro hac vice pending

        Attorneys for Plaintiff

**I, Christopher J Robinson, an attorney at the firm of Rottenberg Lipman Rich PC, do hereby certify that I served a copy of the forgoing First Amended Complaint and exhibits on counsel of record this 31st day of August, 2022 by efiling of the same on the court website.**

**\S\Christopher J Robinson**

Christopher J Robinson